UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

**VERNON SPEAK,**              CASE NO.:

    Plaintiff,

v.

**STEVE WHIDDEN, in his official capacity as SHERIFF of HENDRY COUNTY, FLORIDA, and STEVE WHIDDEN in his individual capacity,**

    Defendant.
_____/

## COMPLAINT

Plaintiff, VERNON SPEAK, hereby sues Defendant, STEVE WHIDDEN in his official capacity as SHERIFF of HENDRY COUNTY, FLORIDA, and STEVE WHIDDEN in his individual capacity, and alleges:

## NATURE OF THE ACTION

1. Plaintiff's claims are brought under 42 U.S.C. §1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff by the First Amendment of the United States Constitution and laws of the United States, under 42 U.S.C. §1988, which authorizes the award of costs and attorney's fees to prevailing plaintiffs in actions brought under 42 U.S.C. §1983. This is also an action brought under §112.3187, *et seq.*, Florida Statutes ("Florida's Public Whistleblower Statute"). Jurisdiction of this court is also invoked pursuant to 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1343 (civil rights claim jurisdiction), and 28 U.S.C. §1367 (supplemental jurisdiction).

2. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), injunctive and equitable relief, attorney's fees and costs.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, VERNON SPEAK, has been a resident of the State of Florida and was employed by Defendant. Plaintiff reported an unlawful employment practice and was the victim of retaliation thereafter.

4. At all times pertinent hereto, Defendant, STEVE WHIDDEN (Defendant Sheriff) has been a Sheriff in Hendry County, Florida and has operated a law enforcement agency known as the HENDRY COUNTY SHERIFF'S OFFICE ("HCSO") in Hendry County, Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above within the jurisdictional boundaries of this Court.

5. At all times pertinent hereto, Defendant, STEVE WHIDDEN, in his individual capacity, has been residing within the jurisdiction of this Court and is sued in his individual capacity.  He is *sui juris*.

## CONDITIONS PRECEDENT

6. Plaintiff has satisfied all conditions precedent to bringing this action, if any. This action is timely filed thereafter.

## STATEMENT OF THE FACTS

7. Plaintiff began his employment with Defendant Sheriff on or around July 10, 2013 and currently holds the position of Detective Sergeant.

8. During Plaintiff's tenure, he received several commendations and positive performance evaluations. However, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because Plaintiff gave a

deposition in a hit and run case adverse to the Sheriff and became the victim of retaliation shortly thereafter.

9. The mistreatment and retaliation came at the hands of specifically but not limited Chief Deputy Kevin Nelson, Internal Affairs Lieutenant Benjamin Rowe, and Road Patrol Lieutenant Mike Stevens, all with the consent and approval of Defendants.

10. On September 11, 2015, while on duty, Plaintiff worked a hit and run incident with bodily injury. After approximately two (2) weeks of investigating the case, Plaintiff located and identified the suspect.

11. Post-Miranda, Plaintiff first obtained an on the site confession from the suspect, who subsequently agreed to meet with an Investigator later the same day. However, the suspect never arrived for the meeting with the Investigator. It was later determined that Sheriff Whidden called the suspect and directed him not to show up for the investigation. Moreover, Sheriff Whidden decided to close the case against the suspect.

12. Thereafter, the Florida Department of Law Enforcement opened an investigation into this case and specifically investigated Chief Deputy Kevin Nelson and Sheriff Whidden. During the investigation of Nelson and Whidden, investigation, facts were uncovered that would lead a person to reasonably believe that Chief Nelson and Whidden would be arrested or at least removed from office. However, the State Attorney's Office refused to bring charges against Chief Nelson and Whidden.

13. On or about July 28, 2016, Plaintiff gave his traffic vest to a Deputy who appeared on the scene of an accident involving a Deputy fatality, as Plaintiff did not require the vest on a daily basis and the other Deputy had a greater need for the vest. When Plaintiff requested a replacement vest from Nikki Hunt, she denied Plaintiff's request. Nikki Hunt is the

Manager/Supply Clerk whose husband, Sgt. Jared Hunt, Plaintiff filed a complaint against for battery a year prior.  It was not until Plaintiff's Lieutenant and Captain became involved, and thereafter, Chief Nelson became involved that Plaintiff was reprimanded based on contrived allegations of having lost his vest.  Yet, Plaintiff never lost his vest, but provided it to another Deputy for safety purposes.  However, Plaintiff faced approximately 16 charges on three (3) different occasions.  By way of example, after Lt. Rowe made charges against Plaintiff, Chief Nelson and Lt. Rowe added charges as well.

14. On August 10, 2016, Plaintiff was subpoenaed to provide testimony in a deposition during which he disclosed information regarding Sheriff Whidden's wrongdoing throughout his employment. Specifically, Plaintiff disclosed that Sheriff Whidden inappropriately intervened in the hit and run case after which the case was dismissed. Thereafter, based on Plaintiff participating in the investigation and providing deposition testimony that was not favorable to Sheriff Whidden, Whidden launched a campaign of retaliatory acts against Plaintiff.

15. By way of example, on or about September 29, 2016, Plaintiff noticed that Lt. Shawn Reed discontinued working out with him.  When Plaintiff asked Lt. Reed what was going on with him, Lt. Reed told Plaintiff that he was confronted by Deputy Echevarria after he was seen in the gym with Plaintiff.  Lt. Reed specifically told Plaintiff that Deputy Echevarria asked him why he decided to work out with a "whistleblowing" snitch.  Lt. Reed stated that he simply did not want any issues with anyone and preferred not to be questioned by Chief Nelson for hanging out with Plaintiff.

16. Thereafter on January 7, 2017, Plaintiff prepared a memorandum to thank several individuals and divisions within the agency and other agencies for their assistance during a

homicide investigation. Rather than permit the memo to reach those who deserved the appreciation, Chief Nelson stopped the memo in an effort to not have Plaintiff recognize other employees of Defendant Sheriff for their actions.

17. In continued retaliation, on February 2, 2017, Plaintiff applied for a position as a Sergeant in Road Patrol. After the interview and road test, Lt. Reed informed Plaintiff that he tested highest during the interview and had the best oral interview. Lt. Reed also told Plaintiff that Nick Reed, his younger brother, barely passed the test and the other candidate Andrew Taylor failed both the test and the interview. Despite Plaintiff being the top candidate, he was not selected for the position. In retaliation against Plaintiff, both Taylor and Nick Reed, who performed poorly, were actually promoted over Plaintiff. As time progressed, Deputy Echevarria and Chief Nelson resorted to other measures to retaliate against Plaintiff for whistleblowing activities, all believed to be at the direction of Sheriff Whidden.

18. On April 3, 2017, Plaintiff drove from Lee County to Hendry County. Plaintiff's partnered followed in a separate vehicle. They encountered a vehicle impeding the flow of traffic. As Plaintiff passed the vehicle, he gestured for the driver to move over and verbalized "move over." The driver then flicked Plaintiff off and began to drive recklessly, following them too closely and videoing Plaintiff, his partner and their vehicles. Plaintiff was not driving a vehicle with sirens or lights; therefore, he called for assistance from other HCSO units.

19. Once Plaintiff arrived in Hendry County, he turned into the fuel barn and the vehicle continued to drive recklessly. Deputy Echevarria then caught up with the vehicle and began to question the driver, who falsely alleged Plaintiff flicked him off and shouted profanities. Plaintiff then learned that Deputy Echevarria precipitously agreed with the reckless

driver. As a result, Deputy Echevarria did not take any further action against the reckless driver and completely the matter related to the traffic stop incident.

20. Thereafter, Deputy Echevarria relayed the information of the traffic stop to Chief Nelson, who then contacted the reckless driver, met with him at his home, and convinced the driver to file a complaint against Plaintiff. Chief Nelson even provided the driver with the form to file the complaint. Chief Nelson left the form with the driver and later went to retrieve the complaint directly from Plaintiff's wife's place of employment and delivered it directly to Internal Affairs, Lieutenant Ben Rowe.

21. Based on Defendant's internal policy, Chief Nelson should have presented the complaint to Lieutenant Buchhofer, Plaintiff's supervisor, to evaluate the merits of the driver's complaint before internal affairs launched an investigation of Plaintiff.

22. In fact, Chief Nelson was aware that Plaintiff applied for a position with another agency, the Seminole Police Department. Within one (1) week, Plaintiff was placed under an IA investigation, which eliminated Plaintiff's ability to be considered for the position with Seminole Police Department.

23. Once the investigation was completed, the findings of the IA investigation revealed the driver's version of the events were unsubstantiated. In retaliation for Plaintiff's whistleblowing activities, Chief Nelson attempted to terminate Plaintiff and label Plaintiff as unworthy to hire.

24. However, after the investigation ended and Plaintiff was cleared of all wrongdoing, Chief Nelson, again with the consent, approval and under the directive of the Sheriff, did not cease his retaliatory acts against Plaintiff. By way of example, Chief Nelson ordered Plaintiff's supervisor Lt. Buchhofer to reprimand Plaintiff for his driving patterns during

the incident; however, the reprimand would have constituted double jeopardy after having been cleared of the IA investigation.  When Lt. Buchhofer refused to issue the reprimand, he became known as an "enemy" of the Chief.

      **25.**     In addition, Lt. Buchhofer rated Plaintiff with the highest or close to the highest evaluation rating in Defendant's history.  However, after Chief Nelson reviewed the evaluation, he called Lt. Buchhofer and Captain Harney into his office and extensively questioned them.  Similarly, Lt. Morales rated Plaintiff's performance with high evaluation scores, even after Plaintiff testified in the case after the Sheriff.  Once Lt. Morales met with Chief Nelson and refused to change the evaluation scores, Lt. Morales was subsequently removed as supervisor and placed on road patrol.

      **26.**     As of April 14, 2017, Deputy Echivarria had been promoted to Sergeant.  At approximately 9:00 p.m., Plaintiff went to meet a county judge to obtain a signature on a search warrant.  Plaintiff had a flat tire and attempted to change the tire, but he did not have any emergency lights on his vehicle.  While attempting the change the tire, his jack failed and his truck nearly fell off the jack to the ground. Plaintiff then called for assistance and reached Deputy Hunter Kearns, who was on shift with Sgt. Echivarria.  When Plaintiff told Deputy Kearns that he required emergency lighting from a squad car, Deputy Kearns texted Plaintiff and told him he was not allowed to assist him. Plaintiff then asked Deputy Kearns why he could not assist him and asked who told him that he could not offer assistance.  In response, Deputy Kearns continued to state that he could not assist Plaintiff.

      **27.**     Plaintiff then contacted Lt. Reed and asked what he could do to assist him and Lt. Reed ordered Deputy Kearns to assist.  However, no one would assist Plaintiff.  Eventually Deputy Hudson arrived on the scene with a jack and lighting.  Plaintiff later discussed this

incident with Deputy Kearns and Deputy Mike Lilley, who both told Plaintiff that Sgt. Echivarria gave them an order not to assist Plaintiff.

28. On May 5, 2017, Plaintiff spoke with Lt. Reed about the issues he had with Chief Nelson. Lt. Reed suggested Plaintiff speak with Chief Nelson. When Plaintiff expressed his concern that he did not believe the Chief would meet with him, Lt. Reed stated he would speak with the Chief. As a result, Chief Nelson asked Plaintiff to place his meeting request in writing. When Plaintiff did as directed, Chief Nelson denied the meeting request and submitted it to FDLE as if Plaintiff desired to meet with him to change his version of the events of the prior reckless driving incident. However, this was in no way the case, but rather an effort to share his concerns about the manner in which he had been treated.

29. In another attempt to retaliate against Plaintiff for whistleblowing activities, on September 18, 2017, Plaintiff attempted to contact a family regarding a deceased person's case; however, he was unable to reach the family due to the phones being down after a hurricane. The family then later questioned why they were not contacted. Chief Nelson and Lt. Stevens told the family that Plaintiff was a horrible detective and they were sorry for Plaintiff's actions. Chief Nelson called Plaintiff's Lieutenant to state the same and that the family was irate, pissed off and screaming. Plaintiff was then called into the office to explain, after which Plaintiff met with the family. The family then told Plaintiff they were not irate and simply wanted to be contacted to know the cause of death. Plaintiff obtained the information and the family thanked him for answering their questions.

30. Thereafter, other officers began to retaliate against Plaintiff. By way of example, on December 11, 2017, as Sgt. Nick Reed and his shift were at breakfast, Plaintiff required back up assistance for a traffic stop. When Deputy Garcia got up to assist Plaintiff, Sgt. Reed told

Deputy Garcia to sit back down and finish eating. Essentially, Sgt. Reed instructed his office not to back Plaintiff up which put Plaintiff into a dangerous situation.

31. In June 2018, Plaintiff applied for a position with the Palm Beach County Sheriff's Office. Although Plaintiff was qualified for the position, he was notified on or around June 26, 2018 that he was not selected for the position due to the continued false investigations by internal affairs. Defendants knew that Plaintiff could not obtain positions with other agencies due to the fact that he was under investigation.

32. On July 31, 2018, Plaintiff prepared a grievance to document all of the concerns of blatant retaliation he faced due to the whistleblowing activities. However, Plaintiff was told to hold off until the then current IA investigation was concluded. Upon information and belief, the current IA remains open in an effort to prevent Plaintiff from gaining employment with any other agency. In addition, three (3) additional charges have been added to the IA investigation as Defendants desire to create extreme hardship for Plaintiff.

33. Other officers have committed far worse acts, including but not limited to making racial slurs regarding a group of citizens. By way of example, Sgt. Favara made a comment that was actually recorded by a citizen and posted to Facebook. Although Defendant seemingly appeared to open an investigation into the matter, upon information and belief, it only resulted in a reprimand, which Sgt. Favara refused to sign. In fact, Sheriff Whidden dismissed the issue, transferred Sgt. Favara to fleet, and then promoted him to Lieutenant.

34. As outlined herein, Plaintiff has unjustifiably faced extreme acts of retaliation to the point of recruiting other officers to engage in the same behavior as Chief Nelson and Sgt. Echevarria. There are continued investigations based on contrived allegations after Plaintiff was subpoenaed to provide deposition testimony in an investigation of Sheriff Whidden.

35. Participating in the investigation after issuance of a subpoena was a matter in which Plaintiff had no control and was required to provide truthful testimony. However, by doing so, Plaintiff worked outside the course and scope of his normal job duties. Thereafter, Defendant and its agents retaliated against Plaintiff for providing his testimony, clearly in violation of Plaintiff's rights under the First Amendment and after he blew the whistle against Defendant Sheriff.

36. As of the date of this filing, Plaintiff has been issued a Notice of Termination, but has committed no wrong.

37. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendants should be made to pay said fee under the statutory provisions cited herein and such other grounds as are authorized.

## COUNT I
## WHISTLEBLOWER RETALIATION AGAINST DEFENDANT SHERIFF

38. Paragraphs 1 through 37 above are re-alleged and incorporated herein by reference.

39. This count sets forth a claim against Defendant Sheriff under §112.3187, et seq., Florida Statutes.

40. Plaintiff was a public employee protected under the provisions of Chapter 112, Florida Statutes.

41. As stated more specifically in part above, Plaintiff reported and disclosed violations of rules, regulations and laws, and/or malfeasance, misfeasance and/or gross misconduct to persons both inside and outside of his normal chain of command, and to others having the authority to investigate, police, manage and otherwise remedy the violations of rules,

regulations and laws that he reported.  Plaintiff also disclosed this information when he participated in investigations, hearings, or other agency inquiries.  Plaintiff reported malfeasance, misfeasance, and other acts specifically outlined in §112.3187(5), Florida Statutes.

42. After reporting these matters and/or participating in investigations, hearings, or other agency inquiries, as related in part above, Plaintiff was the victim of retaliatory actions set forth in part above including without limitation his termination.

43. Plaintiff's discipline, his proposed termination, and/or being blocked from one or more positions were a direct adverse result of his reporting violations of rules, regulations or laws, and/or his reporting malfeasance, misfeasance or gross misconduct, and/or his participating in investigations, hearings or other inquiries, specified in part above.

44. The actions of all employees within Defendant who affected Plaintiff's employment adversely did so at least in part in retaliation against him for his "whistleblowing" activities.

45. As a direct and proximate result of the actions taken against him by Defendant, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, and other tangible damages.  These damages have occurred in the past, are occurring at present and will occur in the future.  Plaintiff is also entitled to injunctive relief.

## COUNT II
## FIRST AMENDMENT RETALIATION AGAINST BOTH DEFENDANTS

40. Paragraphs 1 through 37 above are re-alleged and incorporated.

41. This count sets forth a claim against Defendants for First Amendment retaliation, and is brought through 42 U.S.C. §1983. This count is pled in the alternative.  Defendants are persons under the law.

42. Defendant operated to violate Plaintiff's rights under the First Amendment.

These violations were of the type and character as to which any reasonable person would be aware. Plaintiff's rights to freedoms of speech and expression were violated. Public employees like Plaintiff have the right to engage in First Amendment activities without the fear of reprisal.

43. Plaintiff, as set forth in part above, engaged in constitutionally protected activity by speaking on matters of public concern and beyond the scope of his job duties, including but not limited to his participation in inquiries and investigations both within and without the agency in which he was employed. Plaintiff conducted some or all of his activities and exercised some or all of the rights listed above in the general public and outside of his work place.

44. After engaging in protected activity as related in part above, Plaintiff was the victim of retaliatory actions as set forth in part above. Defendants infringed on Plaintiff's constitutionally protected interests under the First Amendment, as set forth in part above. Defendants' actions, set forth in part above, were the types of retaliatory conduct that would deter a person of ordinary sensibilities from exercising his or her First Amendment rights. Plaintiff's protected activity was a substantial or motivating factor in the adverse actions taken against him.

45. Defendants retaliated against Plaintiff for his First Amendment activity as alleged herein by taking adverse employment actions against him, as set forth in part above.

46. Defendants have deprived Plaintiff of his rights to freedom of speech and expression, protected by the First Amendment.

47. Defendants are persons under the laws applicable to this action. Defendants are liable, jointly and severally, for their actions, individually and in concert, which violated the civil rights of Plaintiff under the First Amendment. The law was clearly established at the time that the actions against Plaintiff were taken herein.

48. Defendants misused their power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violations of Plaintiff's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983.

49. Defendant Whidden, in his official capacity, was the final decision maker in the adverse actions described in part above. He, individually and through Chief Nelson and Sgt. Eschivarria, participated in the actions adverse to Plaintiff and/or in the decisions to engage in such actions, in violation of his rights to free speech and expression under the First Amendment.

50. Sheriff Whidden was the final decision makers in the actions taken against Plaintiff complained of herein.

51. Defendant Sheriff, through and other employees or agents, also failed to implement adequate hiring, retaining, staffing, training and/or supervisory procedures, as a direct result of which Plaintiff's First Amendment rights were violated.

52. The Sheriff, by himself and/or through delegated authority to Chief Nelson had final policymaking authority for the Defendant and were responsible for hiring, retaining, staffing, training, and supervising other employees of the Defendant and, when necessary, for investigating alleged wrongdoing by its employees. Alternatively, in the event it were determined that the Sheriff and Chief Nelson did not have final policymaking authority for Defendant, one or both nonetheless functioned as the final policymakers for Defendant Sheriff in connection with the allegations herein, their decisions and actions having been rubber-stamped at all higher levels of authority.

53. Defendant Sheriff, after notice of the constitutional violations alleged herein, officially sanctioned the actions and refused to discipline its agents and employees, which refusal

established a policy, by a final policymaker, that directly or indirectly resulted in violations of Plaintiff's constitutional rights.

54. Further, Defendant Sheriff ratified the actions of its employees, including the actions of the Sheriff and Chief Nelson, who acted adversely to Plaintiff for the exercise of his First Amendment rights.

55. When Defendant Sheriff ratified the actions adverse of Plaintiff, such adverse actions became the official policy of Defendant Sheriff in retaliation for Plaintiff's exercise of the rights set forth above under the First Amendment.

56. The actions by and on behalf of Defendants set forth in this count were not unique events of the violations set forth herein. On information and belief, further similar events of wrongful actions on the part of Defendant Sheriff and/or its employees or agents have taken place, such events combining to determine a pattern of similar wrongful and illegal behavior.

57. As a direct and proximate result of the actions of Defendants, Plaintiff suffered the adverse employment actions set forth above. He suffered lost wages, benefits, and other tangible damages. Plaintiff has also sustained emotional pain and suffering damages, loss of the capacity for the enjoyment of life, and other intangible damages. These losses have occurred in the past, are occurring at present, and are likely to occur into the future. Plaintiff is entitled under this count to an award of costs and attorney's fees under 42 U.S.C. §1988 and punitive damages against Defendant Whidden in his individual capacity.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendants under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendants and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendants for Defendants' violations of law enumerated herein;

(d) enter judgment against Defendants and for Plaintiff permanently enjoining Defendants from future violations of law enumerated herein;

(e) enter judgment against Defendants and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 19th day of December 2018.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
310 East Bradford Road
Tallahassee, FL 32303
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801
ATTORNEYS FOR PLAINTIFF