UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VERNON SPEAK,

            Plaintiff,

v.

STEVE WHIDDEN, in his official capacity as SHERIFF of HENDRY COUNTY, FLORIDA, and STEVE WHIDDEN in his individual capacity,

            Defendants.

Case No.  2:18-cv-826-FtM-38NPM

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF ITS CASE DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

Defendants, hereby reply to Plaintiff Speak's Response ("Response") to Defendants' pending Motion for Summary Judgment ("Motion") as follows:

### I.    SPEAK'S RESPONSE CONFIRMS HE CANNOT ESTABLISH PRETEXT

Speak's Response does not dispute that Defendants have offered legitimate, non-retaliatory reasons for his dismissal—the various policy violations set forth in Lt. Rowe's report, including Speak's untruthfulness and at-best negligent jeopardization of Pascher's career. (D.E. 63-1 at ¶¶ 14-19; D.E. 63-3 at ¶¶ 14-21, Exs. 7-8).  The gravity of Speak's actions are such that ASA Dommerich, based on Speak's report, still harbors lingering concerns about Pascher to this day. (D.E. 76-29 at 74:17-75:3). Thus, it is Speak's obligation to show that the reasons for his termination are mere pretext for retaliatory animus. *Elver v. Hendry County Sheriff's Office*, 791 Fed. Appx. 56, 59 (11th Cir. 2019). Insofar as Speak disagrees with Lt. Rowe's findings, that is insufficient to establish pretext under well-established law. *See Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (noting the pretext inquiry focuses on the

employer's beliefs and whether the employer was dissatisfied with the employee for nondiscriminatory reasons, "even if mistakenly or unfairly so"); *Alexander v. Fulton Cnty*, 207 F.3d 1303, 1341 (11th Cir. 2000) ("[I]t is not the court's role to second-guess the wisdom of an employer's decision…"). Speak's Response fails to "meet [Defendants' articulated reason] head on and rebut it" as required, thereby warranting summary judgment in Defendants' favor. *Elver v. Hendry County Sheriff*, 791 Fed. Appx. 56, 58 (11th Cir. 2019).

Speak begins his pretext argument by generically stating "Plaintiff did not violate workplace rules as he has shown above." (D.E. 82 at 34). His Response requires Defendants (and this Court) to guess about this means as Speak's assertion is not accompanied by any record citation. It appears Speak relies on his assertions that "Buchhofer spoke in his favor during both IA investigations" and "ASA Dommerich also testified that there were no errors in Plaintiff's investigation." (D.E. 82 at 32-33).

With respect to Buchhofer, it is unclear what Plaintiff is referring to as there is no citation to the record to accompany this statement. Buchhofer, for example, was admittedly not involved in Speak's IA investigation concerning the 2017 citizen complaint and has never reviewed the file. (D.E. 76-15 at 46:10-13). Regardless, whether or not Buchhoffer "spoke in [Speak's] favor" during either investigation does not address the underlying issues found by Lt. Rowe in his investigation, much less establish that such findings were pretext for the retaliation asserted by Speak in this case.

In regards to ASA Dommerich, he has admittedly never worked for the Hendry County Sheriff's Office (or any Sheriff's Office generally). (D.E. 76-29 at 49:9-14). He admittedly is (1) not familiar with the HCSO's policies; (2) has never been asked to determine whether a particular action was in violation of HCSO policy, and (3) generally has no knowledge as to

what action(s) may constitute a violation of an HCSO general order or policy. *Id.* at 49:19 – 50:8. Specific to Speak, Dommerich was not involved in the decision to terminate Speak's employment and has no knowledge of whether Speak's actions violated HCSO policies. *Id.* at 50:9-19, 79:12-24. Accordingly, Dommerich's testimony that he did not perceive any errors in Speaks investigation has no relevance to Lt. Rowe's findings that Speak violated multiple HCSO policies and does nothing to establish pretext.

Plaintiff next argues that his "fellow deputies are 'comparable' in that they were all subject to the same policies and discipline. (D.E. 82 at 34). This vague statement falls well short of the standard for comparators in this Circuit. *See Lewis v. City of Union City*, 918 F.3d 1213, 1229 (11th Cir. 2019) (holding a comparator must be "similarly situated in all material respects"). Plaintiff has already conceded he is not aware of another employee who engaged in similar conduct as him and not been terminated. (D.E. 60 at 13, ¶ 41; D.E. 82 at 6, ¶ 41). To the extent Plaintiff suggests that he was unique insofar as he was the subject of two internal affairs investigations that did not first originate as supervisory inquiries, Speak is both mistaken and misunderstands HCSO policy. Nothing in HCSO policy requires potential policy violations to first be reviewed as a supervisory inquiry before progressing into an internal affair interview. D.E. 88-1 at ¶¶ 3-6; D.E. 63-2 at ¶¶ 19-20. Deputy Pascher's IA is an example of this, as well as Speak's. (D.E. 88-1 at ¶ 4).

Continuing through Speak's Response, Speak further argues that Det. Pascher's investigation was "rushed" so Lt. Rowe could take statements during the investigation to "target Plaintiff." (D.E. 82 at 34). The record does not support Speak's argument, and Speak does not offer any. *See* D.E. 60 at 8-9, ¶¶ 20-22; D.E. 82 at 4, ¶¶ 20-22). Notably, when the impetus for the Pascher IA was Speak's implication that Pascher had committed a crime only for Speak to

then admit under oath that he should have been clearer in his report and he had no concerns Pascher had done anything wrong, it is hardly surprising that Lt. Rowe's investigation of Pascher took less time than his subsequent investigation of Speak. (D.E. 60 at 9, ¶¶ 19-20; D.E. 82 at 4, ¶¶ 19-20).

Finally, Speak attempts to establish pretext through reference to various alleged statements attributed to Rowe, Sheriff Whidden and Shawn Reed. The statements attributed to Rowe are predicated on inadmissible hearsay and/or are not supported in the record as outlined in Part V, *infra*. *See McCaskill v. Ray*, 279 Fed. Appx. 913 (11th Cir. 2008) (citing *Macuba v. Deboer*, 193 F. 3d 1316 (11th Cir. 1999) with favor and noting that inadmissible hearsay cannot be considered on a motion for summary judgment). Reed's alleged statement also constitutes inadmissible hearsay. Buchhofer testified that he does not know what Reed meant, whether he formed his opinion based on his review of the underlying IA (since Reed was already on the panel at this time), or how he reached his opinion. (D.E. 76-15 at 139:14-141:13). The alleged statement attributed to Sheriff Whidden was addressed in Defendants' pending Motion. (D.E. 60 at 20-21). Collectively, none of these statements demonstrate a genuine issue of fact concerning whether Sheriff Whidden would have made the same decision to adopt the panel's unanimous recommendation and dismiss Speak from his employment irrespective of his alleged protected conduct.

**II. SPEAK'S "WITHOUT KNOWLEDGE AND THEREFORE DENIED" RESPONSES TO DEFENDANTS' STATEMENTS OF FACT RENDER SUCH FACTS UNDISPUTED**

Per this Court's Case Management Order:

> In deciding a motion for summary judgment, the Court ***will deem admitted*** any fact in the statement of material facts that the opposing party does not specifically controvert, provided the moving party's statement is supported by evidence in the record.

(D.E. 22 at 6) (emphasis added). When a party responds to statements of fact supported by record evidence with "without knowledge and therefore denied," courts deem such facts admitted for purposes of summary judgment. *See e.g., Christensen v. City of Warner Robins*, Case No. 5:16-cv-76, 2018 WL 1177250 *4 (M.D. Ga. Mar. 6, 2018) (noting plaintiff's "without knowledge, and therefore, denied" response constituted a "conclusory denial" that did nothing to rebut the fact at issue); *Grant v. Hospital Authority of Miller Cnty*, Case No. 1:15-cv-201, 2017 WL 3527703 *2 (M.D. Ga. Aug. 16, 2017) (treating all statements of fact as admitted when reviewing motion for summary judgment where supported by a specific record citation and addressed only with the response "without knowledge, and therefore, denied").

Here, Speak's Response is replete with conclusory denials of Defendants' Statement of Facts articulated as "without knowledge and therefore denied." Because Defendants' statements are each supported by pinpoint record citations, all facts met with such a response are now undisputed, highlighted by the following which undermine the foundation of Speak's claims.

1. Lt. Rowe's investigation of Speak began after Lt. Rowe, on his own initiative, authored a memorandum to Chief Nelson relaying his concerns that Speak may have unjustifiably implicated Pascher in criminal wrongdoing and unnecessarily jeopardized the safety of a witness which became evident during his internal affairs investigation of Pascher. (D.E. 60 at 9, ¶ 22; D.E. 82 at 4, ¶ 22).

2. During Lt. Rowe's investigation of Speak, Lt. Rowe found numerous problems with Speak's investigation and determined Speak to be untruthful in his responses to Lt. Rowe's questions. (D.E. 60 at 10, ¶¶ 24-27; D.E. 82 at 4, ¶¶ 24-27).

3. Lt. Rowe's investigative findings were based solely on his investigation without influence from Chief Nelson, Sheriff Whidden, or anyone else at the Sheriff's Office. (D.E. 60 at 11, ¶ 30; D.E. 82 at 5, ¶ 30).

4. After Lt. Rowe concluded his investigation, Speak challenged his findings before a three-member panel. Captain Harrelle chaired the pre-disciplinary hearing panel by default after Captain Harney recused himself. Captain Harrelle selected the other panel members without influence from Chief Nelson or Sheriff Whidden. (D.E. 60 at 12, ¶¶ 33-34; D.E. 82 at 5, ¶¶ 33-34).

5. Each panel member recommended Speak's dismissal based on his or her own independent review of Lt. Rowe's investigation. (D.E. 60 at 12, ¶ 39; D.E. 82 at 5, ¶ 39).

6. Sheriff Whidden has never overturned a panel's unanimous recommendation of dismissal. (D.E. 60 at 12-13, ¶ 40; D.E. 82 at 5-6, ¶ 40).

7. No other deputy has engaged in similar conduct as Speak under Sheriff Whidden's administration and remained employed. (D.E. 60 at 13, ¶ 41; D.E. 82 at 6, ¶ 41).

Collectively, these undisputed facts confirm Speak cannot establish a genuine issue of material fact as to pretext regarding (1) Lt. Rowe's investigative findings or the manner in which his investigation was conducted; (2) the assembled pre-disciplinary hearing panel's unanimous recommendation of dismissal; or (3) Sheriff Whidden's adoption of the panel's unanimous recommendation. Coupled with the inadequacies of Speak's argument addressed in Part I, *supra*, summary judgment is warranted. *See Elver v. Whidden*, Case No. 2:18-cv-102, 2019 WL 144916 *10-11 (M.D. Fla. Jan. 9, 2019) (granting summary judgment where plaintiff did not offer any admissible evidence to challenge the articulated reason for his dismissal as set forth in multiple affidavits from the key individuals involved), *aff'd* 791 Fed. Appx. 56 (11th Cir. 2019).

### III. SPEAK'S RESPONSE APPEARS TO CHALLENGE PERSONNEL ACTIONS THAT HAVE NOT BEEN TIMELY RAISED

Speak's Response makes passing reference to his denied promotion, the delay in his reissuance of a traffic vest, the commencement of IA investigations, and "discipline" against him as challenged adverse actions in this case. (D.E. 82 at 32). Each of these discrete acts predates June 24, 2018 and are thus time barred under the FWA. (D.E. 60 at 13). As discrete acts, the continuing violation doctrine does not apply. *See e.g. Reese v. City of Crystal River*, Case No. 5:03-cv-232, 2006 WL 1360903 *2-3 (M.D. Fla. May 18, 2006) (dismissing plaintiff's whistleblower claim as time barred while noting "the continuing violations doctrine may not be applied to incorporate untimely claims for discrete discriminatory acts even though they may be

related to a timely claim.").

Moreover, Speak offers no record evidence that would establish a connection between his untimely identified adverse actions and his asserted protected activity. For example, Speak has already testified that he has no knowledge as to why he was not promoted. (D.E. 60 at 5, ¶12(iii)). The record confirms he was the lowest ranked of three applicants. *Id.*; D.E. 63-1 at ¶ 7; 63-2 at ¶ 15-18. The commencement of IA investigation is not even an actionable adverse action and Speak's only discipline prior to his dismissal were verbal reprimands issued by Buchhofer who Speak does not believe retaliated against him. (D.E. 60 at 4, ¶ 11; D.E. 61 at 156:7-9).

### IV.   THE COURT SHOULD DISREGARD SPEAK'S NOVEL THEORY OF WHISTLEBLOWER RETALIATION[1]

In both his initial and Amended Complaint (filed *after* his deposition), Speak has identified his protected activity as his August 2016 deposition. (D.E. 1 at ¶ 8; D.E. 40 at ¶ 8) (alleging he was "the victim of retaliation" "***because [he] gave a deposition*** in a hit and run case adverse to the Sheriff"). Paragraph 14 of Plaintiff's initial and Amended Complaint confirms the basis of Plaintiff's retaliation claim as the deposition testimony he gave on August 10, 2016. (D.E. 1 at ¶ 14; D.E. 40 at ¶ 14).

In his Response, Speak does not dispute that his deposition testimony is not protected whistleblowing activity under section 112.3187, Fla. Stat. (D.E. 82 at 23-24). Instead, Speak abandons the premise of his lawsuit to instead rely upon unpled allegations of alleged protected activity—an interview he gave with FDLE and unspecified "written complaints with his chain of

---

[1] It does not appear that Speak is asserting his FDLE testimony and the various unspecified internal memoranda are protected activity under the First Amendment. *See* D.E. 82 at 26-30. Any attempt to do so would fail as Speak's FDLE interview does not constitute protected First Amendment speech under *Bott v. Bradshaw*, 791 Fed. Appx. 41, 45 (11th Cir. 2019). *See e.g.*, D.E. 60 at 15-17. Speak's internal memoranda to supervisors raising various gripes regarding employment matters does not constitute First Amendment protected speech. *See Boyce v. Andrew*, 510 F. 3d 1333, 1343-47 (11th Cir. 2007) (holding personal grievances made internally to supervisors regarding matters personal to their job were not protected, notwithstanding the fact they were intermingled with matters of arguable public concern)

command." (D.E. 82 at 22-24). The Court should not countenance Plaintiff's efforts to amend his Complaint through his response to Defendants' Motion for Summary Judgment. *See e.g., Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Even if the Court considered Plaintiff's change in theory, however, his claim still fails.

### A. There is No Causal Connection Between Speak's FDLE Interview and Speak's Termination

There is no admissible evidence under the developed record that suggests a causal connection between Speak's FDLE interview and his subsequent termination. *See* D.E. 60 at 17 (for case law regarding Speak's causation burden). In addition to the causation issues noted with respect to Speak's claim pertaining to his civil deposition which are equally applicable here (D.E. 60 at 17-18), Speak was not the only one who was interviewed by the Florida Department of Law Enforcement and provided testimony that was objectively unfavorable to the Sheriff's Office. (D.E. 61 at 300:19-301:2; 314:13-25).

According to Speak, Lt. Joshua Woods also provided negative testimony against the Sheriff—testimony Speak identified as fundamental to the investigation of Sheriff Whidden. *Id.* at 314:13-25 (stating "a lot of what the outcome was supposed to be was based on whether Josh Woods would corroborate the fact that he was told to close the case . . . ."). Though Woods did testify in the manner indicated by Speak (D.E. 88-2 at ¶¶ 12, Ex. 1), he never experienced retaliation thereafter. *Id.* at ¶ 13. Thus, to the extent the Court recognizes Speak's claim of retaliation based on his FDLE interview, his claim fails for lack of causation.

### B. Speak Cannot Save His Whistleblower Claim By Relying on Unspecified "Written Complaints" Authored Throughout His Employment

There is no question that Speak's initial Complaint does not claim he experienced

8

retaliation on account of any written memoranda he authored during his employment. As Speak testified, Defendants are simply to assume such unpled allegations. (D.E. 61 at 325:24-326:10). *After* his deposition, however, Plaintiff filed an Amended Complaint which again failed to mention any written memoranda as being a part of his claim. (D.E. 40). Speak should not be permitted to now rely on these memoranda in an effort to survive summary judgment.

Regardless, it remains Speak's burden to identify the statutorily protected activity underlying the basis for his claim as part of his *prima facie* case. Speak's Response does not identify the memoranda he claims as statutorily protected expression beyond referring to them as "the memoranda Plaintiff filed" or "written complaints with his chain of command." (D.E. 82 at 22, 24). Accordingly, Defendants are left guessing which memoranda he is referring to such that it is impossible for Defendants to evaluate and respond.[2] Plaintiff's claim should be rejected on this basis alone.

Moreover, nothing in the record establishes that Sheriff Whidden was even aware of Speak's various internal memoranda and Speak offers nothing to establish any connection between such memoranda and his dismissal. (D.E. 76-17 at 53:14-58:7). As a result, Speak's reliance upon them does not save his otherwise legally deficient whistleblower claim.

### V. SPEAK'S NON-ENUMERATED "DISPUTED MATERIAL FACTS" PRESENTATION SHOULD BE IGNORED BY THE COURT

The Court's Case Management Order requires a party opposing summary judgment to identify any material facts contended to be in dispute to identify them ***in numbered paragraphs accompanied by pinpoint record citations establishing the facts***. (D.E. 22 at 6) (emphasis added). Contrary to the Court's instructions, Speak's Response presents a 13-page non-

---

[2] Absent Speak's identification of which memoranda he is referring to, Defendants cannot, for example, determine whether they qualify as protected activity under the FWA.

enumerated narrative replete with immaterial assertions, facts that are not actually disputed, and numerous conclusory statements unsupported by the record yet are presented as disputed issues of fact. Speak's presentation makes it impossible for Defendants to meaningfully respond without parsing out each sentence of each Paragraph over each of the 13 pages—a task which alone would far exceed Defendants' allotted page limit. Defendants submit Plaintiffs' "Disputed Material Facts" section should be struck/disregarded by the Court as a result. Out of an abundance of caution, however, Defendants identify the following assertions to illustrate just a few examples of the issues that plague Speak's entire presentation:

### *Page 9*

*On September 26, 2016, Plaintiff received an evaluation scoring 98.1%. [Ex. 100, ¶ 22; Ex. 5]. Chief Nelson questioned such a high score and ordered Lt. Morales to lower the score. [Ex. 100, ¶ 23; Ex. 101, p. 284-287].*

Admitted in part, denied in part. It is admitted that Plaintiff received a 98.1% on his September 2016 performance appraisal. The remainder is denied and Speak has no evidence to support his contention in the second sentence beyond inadmissible hearsay. (D.E. 60 at 7, ¶ 13).

*On September 29, 2016, Plaintiff filed a memorandum reporting that Detective Sergeant Nester Echeverria was calling Plaintiff a snitch, and requesting that Plaintiff be removed from the SRT team because of his testimony during the August 10, 2016 deposition. [Ex. 100, ¶ 24; Ex. 12]. Echevarria received a verbal counseling for referring to Plaintiff as a snitch, but Whidden and Nelson refused to investigate Plaintiff's complaint, and instead, ordered that the matter be handled with the SRT team. [Ex. 107, p. 8; Ex. 104, p. 20-21; Ex. 108, p. 22-25].*

Admitted in part, denied in part. It is admitted that Plaintiff authored a memorandum which speaks for itself. (D.E. 69-12). The record reflects Captain Harney handled the matter internally within the Specialist Response Team as is normal practice. (D.E. 76-19 at 22:10-20, 25:17-25). There is no record that Chief Nelson or Sheriff Whidden were even aware of Speak's memo much less were aware and refused to investigate it. *Id.*; D.E. 63-2 at ¶ 12; D.E. 76-21 at

29:20-30:7). Echeverria received a two-day suspension from SRT in addition to a reprimand. (D.E. 60 at 4, ¶ 12(i)).

> **Page 10**
>
> *Ultimately, Plaintiff was assigned as lead investigator for the case, and in drafting his report, he accurately relayed conversations that he had with the witnesses and/or suspects, including the fact that the suspects received information from Deputy Pascher through her boyfriend. . . .*

Denied. Speak has conceded that his report was not accurate, stating "I wish I could have been more specific in what I wrote" while adding that he had "no concerns" that Pascher had done anything wrong. (D.E. 63-3 at ¶ 9; *see also* D.E. 60 at 8-9, ¶ 20; D.E. 82 at 4, ¶ 20).

> **Page 11**
>
> *Rowe attempted to pass off his responsibility in investigating Pascher to Plaintiff, an investigation that Plaintiff was not authorized to conduct. [Ex. 100, ¶ 32; Ex. 104, p. 114, 121-122].*

Denied. Speak's report implicated Pascher in criminal wrongdoing that was directly related to his underlying criminal investigation, *i.e.* that Pascher tipped off his suspects of law enforcement's impending arrival. Speak was not only authorized to investigate Pascher's involvement as part of his criminal case but was expected to do so. (D.E. 63-1 at ¶ 10; D.E. 63-2 at ¶ 24; D.E. 63-6 at ¶¶ 15-16; D.E. 63-7 at ¶ 11; D.E. 63-8 at ¶ 9).

> **Page 15**
>
> *In the summer of 2018, Rowe told a coworker, Nicholas Todd, that he had everything in place to get rid of Plaintiff. [Ex. 111, p. 46-47].*

Denied. This statement constitutes inadmissible hearsay and is, notwithstanding, a misrepresentation of Todd's testimony. (D.E. 76-22 at 44:14-45:10, 46:21-47:10). There is no record evidence to support Plaintiff's assertion quoted above.

*Page 17*

> *Rowe told Defendant Whidden that if he made lieutenant and investigator, Rowe would `go after certain individuals. [Ex. 113, p. 19-20].*

Denied. This assertion is solely supported by inadmissible hearsay testimony from former deputy Guillermo Rodriguez about what he allegedly heard during a conversation in early 2016. (D.E. 76-24 at 19:10-14). Notwithstanding, the alleged conversation predated Speak's August deposition testimony by several months and it is therefore immaterial to this case. *Id.* at 67:4-9.

> *Shortly after Rowe was promoted, he began targeting individuals who were vocal in their criticism of Defendants. [Ex. 113, p. 19-21; Ex. 114, p. 7-11; Ex. 115, p. 7-11, 14, 17-18; Ex. 111, p. 4-5, 27].*

Denied. This conclusory assertion is not supported by Speak's record citations, all of which consist of deposition testimony of various individuals with no personal knowledge of the IAs they perceived to be "targeting" and/or concern matters unrelated to Speak are therefore immaterial. *See* D.E. 76-24 at 20:19-22, 21:5-25; 22:19-23:3, 23:10-22, 24:3-6; D.E. 76-25 at 11:16-12:4, 13:7-14:14; D.E. 76-26 at 12:8-15; 21:9-17; 22:6-13; D.E. 76-22 at 35:10-36:17, 36:25-37:2; 38:8-14).

## VI. SHERIFF WHIDDEN REMAINS ENTITLED TO QUALIFIED IMMUNITY

Plaintiff's argument against qualified immunity is entirely reliant on *Lane v. Franks*. Plaintiff's Response does not address or even mention, the *Bott v. Bradshaw* decision outlined in Defendants' Motion which post-dates and distinguishes *Lane* under facts similar to those presented in this case. (D.E. 60 at 16-17, 25). Moreover, as articulated above, Speak has offered nothing to undermine the sanctity of Lt. Rowe's investigation, Speak's pre-disciplinary panel's recommendation of dismissal, or the Sheriff's adoption of the recommendation in terminating Speak's employment. Speak's Response fails to offer any authority which would overcome Sheriff Whidden's entitlement to qualified immunity in this case.

Respectfully submitted,

*s/ Matthew D. Stefany*
BRIAN KOJI
Florida Bar No. 0116297
MATTHEW D. STEFANY
Florida Bar 98790
*Counsel for Defendant*
**ALLEN NORTON & BLUE, P.A.**
Hyde Park Plaza - Suite 225
324 South Hyde Park Avenue
Tampa, Florida 33606-4127
(813) 251-1210 | (813) 253-2006 – Fax
E-Mail:  bkoji@anblaw.com
            mstefany@anblaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of November, 2020, a true and correct copy of the foregoing was sent via electronic mail to Marie A. Mattox of MARIE A. MATTOX, P.A., 310 East Bradford Road, Tallahassee, FL 32303 and Steven A. Ramunni, Esq., of STEVEN A. RAMUNNI, P.A., 110 North Main Street, Labelle, Florida 33935 *[marie@mattoxlaw.com; michelle2@mattoxlaw.com; marlene@mattoxlaw.com; steve@sramunnipa.com].*

*s/ Matthew D. Stefany*
ATTORNEY

13